NOT FOR PUBLICATION

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Melvin De Freitas, Jr.,<br><br>Plaintiff,<br><br>v.<br><br>Todd Thomas, et al.,<br><br>Defendants. | No.  CV 13-01364-PHX-SRB (ESW)<br><br>**ORDER** |

Plaintiff Melvin De Freitas, Jr., who is currently confined in Saguaro Correctional Center, brought this civil rights action pursuant to 42 U.S.C. § 1983.  (Doc. 36.) Defendants move for summary judgment, and Plaintiff opposes.[1]  (Docs. 107, 131.) Defendants also seek Rule 11 sanctions against Plaintiff, including dismissal of this action with prejudice, due to Plaintiff's submission of fraudulent witness declarations in support of his claims and attempts to bribe other inmates to provide false testimony. (Doc. 104.)  The Magistrate Judge issued a Report and Recommendation recommending that the Court deny the Motion for Sanctions (Doc. 167), to which Defendants filed an Objection (Doc. 170).

Also pending before the Court is Plaintiff's request for injunctive relief regarding access to the law library (Doc. 101) and Plaintiff's request for injunctive relief relating to the R-dap III Substance Abuse Treatment Program (Doc. 184; Doc. 186.)

---

[1] The Court provided notice to Plaintiff pursuant to *Rand v. Rowland*, 154 F.3d 952, 962 (9th Cir. 1998) (en banc) regarding the requirements of a response.  (Doc. 109.)

## I. Background

On July 8, 2013, Plaintiff filed a civil rights Complaint (Doc. 1) against various Defendants. After screening pursuant to 28 U.S.C. § 1915A(a), the Court ordered Defendant Carrier to answer Plaintiff's threat-to-safety claim in part of Count IV and directed Defendant Romero to answer Plaintiff's threat-to-safety claim and retaliation claim in Count VII and part of Count VIII. (Doc. 6 at 18). The Court dismissed all other Defendants and claims in the Complaint without prejudice. (*Id.* at 19). The Court later allowed Plaintiff to file a Second Amended Complaint: (1) reiterating the threat-to-safety claim against Defendant Carrier and the threat-to-safety and retaliation claims against Defendant Romero, and (2) alleging new claims of excessive force against Defendants Romero, Carrier, Griego, and Flores arising out of a March 28, 2014 incident. (Doc. 35 at 4).[2]

Specifically, in his Second Amended Complaint, Plaintiff relevantly alleged as follows. In Count IV, Plaintiff alleged that on May 18, 2013, Carrier stated that he was going to move an inmate into Plaintiff's cell whom Carrier knew would attack or kill Plaintiff, which the Court found adequately stated an Eighth Amendment threat-to-safety claim against Defendant Carrier. (Doc. 6 at 7; Doc. 35 at 4.) In Count VII, Plaintiff alleged that on December 6, 2012, December 11, 2012, and May 18, 2013, Romero called Plaintiff a child molester and rat in a loud voice several times in front of the whole unit and said he was going to kill Plaintiff and, on May 21, 2013, inmates in the unit banged their doors and yelled that they were going to kill Plaintiff while referring to him as a rat and child molester, which the Court found adequately stated an Eighth Amendment threat-to-safety claim against Defendant Romero. (Doc. 6 at 8, 10; Doc. 35 at 4; Doc. 36 at 11.) In Count VIII, Plaintiff alleged that on December 6, 2012 and December 11, 2012 Romero called Plaintiff a child molester and told Plaintiff that he had better stop his legal writings or he would be found hanging in his cell, which the Court found adequately

---

[2] The Court dismissed all other claims alleged in the Second Amended Complaint. (Doc. 35 at 4).

stated a First Amendment retaliation claim against Defendant Romero. (Doc. 6 at 8, 10; Doc. 35 at 4.)

In Counts XIII, XIV,[3] XV, and XVI, Plaintiff alleged that on March 28, 2014, he was ordered to cuff up by Defendants Romero, Carrier, and Flores, while Griego claimed to be videotaping. (Doc. 36 at 17-20.) Romero and Flores then took Plaintiff to the shower cage, where he was slammed into the shower wall and Romero and Flores kept punching Plaintiff, pulling his hair and slamming his face into the concrete tile wall and Flores kneed him in the legs. (*Id.*) Plaintiff further alleged that Carrier and Griego failed to intervene to prevent the attack. (*Id.*) The Court found that these allegations adequately stated excessive force claims against Defendants Romero, Carrier, Flores, and Griego. (Doc. 35 at 4.).

**II.   Defendants' Motion for Sanctions, the Report and Recommendation, and Defendants' Objection**

    **A.   Background**

Defendants filed a Motion for Sanctions Pursuant to Rule 11 (Doc. 104) asserting that Plaintiff knowingly filed two false declarations prepared by another inmate, Vinano, and a false declaration prepared by a former inmate, Lafoga. Defendants later supplemented their Motion for Sanctions asserting that Plaintiff attempted to bribe other inmates to be witnesses for him. The Court requested that the Magistrate Judge hold an evidentiary hearing and issue a Report and Recommendation on the Motion for Sanctions. On May 6, 2016, the Magistrate Judge issued a Report and Recommendation (Doc. 167) finding that an evidentiary hearing was unnecessary, that Plaintiff properly withdrew the Vinano declarations within Rule 11's safe harbor period, that the objections to Lafoga's declaration were based on hearsay, and that Defendants did not meet their burden of showing that Lafoga's declaration was false and Plaintiff knew it to be false. The Magistrate Judge further found that Plaintiff's alleged attempts to bribe other inmates to be witnesses were not subject to Rule 11 sanctions. Defendants filed an objection to

---

[3] This Count is labeled "XIIII" in the Second Amended Complaint.

- 3 -

the Report and Recommendation (Doc. 170).

### B. Legal Standard

This Court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1). It is "clear that the district judge must review the magistrate judge's findings and recommendations de novo *if objection is made*, but not otherwise." *United States v. Reyna–Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003) (en banc); *accord Schmidt v. Johnstone*, 263 F. Supp. 2d 1219, 1226 (D. Ariz. 2003) ("Following *Reyna–Tapia*, this Court concludes that *de novo* review of factual and legal issues is required if objections are made, 'but not otherwise.'"); *Klamath Siskiyou Wildlands Ctr. v. U.S. Bureau of Land Mgmt.*, 589 F.3d 1027, 1032 (9th Cir. 2009) (the district court "must review de novo the portions of the [magistrate judge's] recommendations to which the parties object."). District courts are not required to conduct "any review at all . . . *of any issue* that is not the subject of an objection." *Thomas v. Arn*, 474 U.S. 140, 149 (1985) (emphasis added); *see also* 28 U.S.C. § 636(b)(1) ("A judge of the court shall make a de novo determination of those portions of the [R & R] to which objection is made.").

### C. Discussion

Defendants argue that Plaintiff's attempt to withdraw the false declarations of Vinano was inadequate and untimely. The Court has reviewed the record and agrees with the Magistrate Judge's finding that Plaintiff's attempt to withdraw the false declarations was timely and adequate. Accordingly, Defendants' objections to the Report and Recommendation are overruled, the Magistrate Judge's Report and Recommendation is adopted as the Order of this Court, and the Motion for Sanctions will be denied.

**III. Plaintiff's Requests for Injunctive Relief (Doc. 101; Doc. 184)**

Plaintiff has, on multiple occasions, requested relief from the Court based on his allegations that Defendant Griego oversees the law library and has refused to allow Plaintiff to access the Federal Rules of Civil Procedure, the Federal Rules of Evidence or the Local Rules of Civil Procedure. In Response to Plaintiff's request for relief,

- 4 -

Defendants argue that Plaintiff needs to exhaust all available administrative remedies before bringing this issue to the Court and that Plaintiff's request was improperly presented in a motion requesting other relief. (Doc. 105 at 2-3.)

The Court agrees. Plaintiff's request for relief is unrelated to the underlying merits of this lawsuit. If Plaintiff has a claim based on the alleged denial of books in the law library, he must first exhaust his administrative remedies before asserting that claim.

Moreover, in an August 29, 2016 Order, the Magistrate Judge construed a Supplement that Plaintiff filed as seeking injunctive relief in the form of an "order to place 'Plaintiff into his recommended R-dap III Substance Abuse Treatment Program and restrain/forbid A/W Griego from retaliation and retaliatory disciplinary reports by A/W Griego and his staff and to 'stop' threat[en]ing Plaintiff's parole eligibility and consideration. 'Plus: Personal Safety.'" (Doc. 185 (quoting Doc. 184).)[4] These issues are wholly outside the issues alleged in Plaintiff's Second Amended Complaint, and, as such, are not appropriately addressed in this action. *See Devose v. Herrington*, 42 F.3d 470, 471 (8th Cir. 1994) (per curiam) (a party seeking injunctive relief must establish a relationship between the claimed injury and the conduct asserted in the complaint).

Accordingly, the Court will deny Plaintiff's requests for injunctive relief.

**IV. Motion for Summary Judgment**

Defendants assert that they are entitled to summary judgment on each of the remaining claims in Plaintiff's Second Amended Complaint.[5]

A court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23

---

[4] Plaintiff thereafter filed a Motion requesting the same relief. (Doc. 186.)

[5] The Court will not address Defendants' argument that Plaintiff did not properly exhaust his available administrative remedies because, as discussed herein, the Court finds that Defendants are entitled to summary judgment on the merits of Plaintiff's claims.

(1986).  The movant bears the initial responsibility of presenting the basis for its motion and identifying those portions of the record, together with affidavits, if any, that it believes demonstrate the absence of a genuine issue of material fact.  *Celotex*, 477 U.S. at 323.

If the movant fails to carry its initial burden of production, the nonmovant need not produce anything.  *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Co., Inc.*, 210 F.3d 1099, 1102-03 (9th Cir. 2000).  But if the movant meets its initial responsibility, the burden shifts to the nonmovant to demonstrate the existence of a factual dispute and that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmovant.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 250 (1986); *see Triton Energy Corp. v. Square D. Co.*, 68 F.3d 1216, 1221 (9th Cir. 1995).  The nonmovant need not establish a material issue of fact conclusively in its favor, *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288-89 (1968); however, it must "come forward with specific facts showing that there is a genuine issue for trial."  *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal citation omitted); *see* Fed. R. Civ. P. 56(c)(1).

At summary judgment, the judge's function is not to weigh the evidence and determine the truth but to determine whether there is a genuine issue for trial.  *Anderson*, 477 U.S. at 249.  In its analysis, the court does not make credibility determinations; it must believe the nonmovant's evidence and draw all inferences in the nonmovant's favor.  *Id.* at 255; *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007).  The court need consider only the cited materials, but it may consider any other materials in the record.  Fed. R. Civ. P. 56(c)(3).

### A.     Counts IV & VII

Defendants argue that Plaintiff's threat-to-safety claims against Defendants Romero and Carrier in Count IV and VII are insufficient as a matter of law because, even accepting Plaintiff's allegations as true, Defendant Carrier's and Defendant Romero's

1  comments only amount to verbal insults or harassment, which generally do not violate the
2  Eighth Amendment.  Defendants further assert that Defendants Romero and Carrier deny
3  Plaintiff's allegations.  Finally, Defendants argue that Plaintiff's claims for emotional
4  distress and psychological injury are not enough to support a threat-to-safety claim
5  pursuant to 42 U.S.C § 1997(e).

### 1. Defendant Carrier—Count IV

Plaintiff asserts that on May 18, 2013, Defendant Carrier threatened to move a 300 pound inmate, who is 6' 3" tall, a convicted murderer and who has schizophrenia, into Plaintiff's cell.  (Doc. 132 ¶ 5.)  Plaintiff asserts that Carrier put his finger across his throat indicating that the inmate would kill Plaintiff and that, at the same time, Romero was in front of the other inmate's cell "acting like he was opening [the other inmate's] cell door to move him in with [Plaintiff]."  (*Id.* ¶ 6.)  Plaintiff asserts that Defendant Carrier told Plaintiff "you won't last a day."  (*Id.* ¶ 12.)  Defendant Carrier denies Plaintiff's version of facts.  (Doc. 108 ¶ 7.)  Defendant Carrier asserts that on May 18, 2013, while he was making his usual rounds, he was talking to the other inmate when Plaintiff interrupted and Plaintiff challenged Defendant Carrier to put the other inmate into Plaintiff's cell, stating "we'll see what happens" and "he wouldn't last a minute." (*Id.* ¶¶ 5-15.)  Defendant Carrier asserts that he told Plaintiff he was not going to do that and Plaintiff would not want him to do that.  (*Id.* ¶ 16.)  Plaintiff does not dispute that the other inmate was never actually moved into his cell and that Plaintiff was not assaulted by any other inmate after that incident.  (*Id.* ¶¶ 20-21.)

Typically, to state a claim for threat to safety, an inmate must allege facts to support that he was incarcerated under conditions posing a substantial risk of harm and that prison officials were "deliberately indifferent" to those risks.  *Farmer v. Brennan*, 511 U.S. 825, 832-33 (1994).  To adequately allege deliberate indifference, a plaintiff must allege facts to support that a defendant knew of, but disregarded, an excessive risk to inmate safety.  *Id.* at 837.  That is, "the official must both [have been] aware of facts from which the inference could be drawn that a substantial risk of serious harm exist[ed],

and he must also [have] draw[n] the inference." *Id.* This includes, for example, exposure to a substantial risk of harm, even when the threatened harm has not yet occurred. *Id.* at 845. However, "[v]erbal harassment or abuse is not sufficient to state a constitutional deprivation under 42 U.S.C. § 1983." *Oltarzewski v. Ruggiero*, 830 F.2d 136, 139 (9th Cir. 1987).

Moreover, mere threats of future harm do not constitute a constitutional wrong. *Gaut v. Sunn*, 810 F.2d 923 (9th Cir. 1987). Nonetheless, the Ninth Circuit Court of Appeals has recognized that evidence of something more than harassment that was "calculated to and did cause . . . psychological damage" might be sufficient to state a claim for a constitutional violation. *Keenan v. Hall*, 83 F.3d 1083, 1092 (9th Cir. 1996). Further, district courts within the Ninth Circuit and other circuit courts have recognized that "[a] threat of deadly force made merely to inflict gratuitous fear and punishment when the party has both the opportunity to carry out the threat and evidences the intent to do so does state a cognizable claim under the Eighth Amendment." *Oliver v. Noll*, No. C09-3840-RMW-PR, 2012 WL 2055033, at -PR, 2012 WL 2055033, at *2 (N.D. Cal. June 5, 2012); *see Parker v. Asher*, 701 F.Supp. 192, 194-95 (D. Nev. 1988); *Northington v. Jackson*, 973 F.2d 1518, 1524 (10th Cir. 1992).

In this case, Plaintiff's allegations do not give rise to an Eighth Amendment threat-to-safety claim because Plaintiff has produced no evidence showing that he was exposed to a substantial risk of harm. Plaintiff does not bring forth any evidence demonstrating that sharing his cell with the other inmate would constitute a threat of deadly force or that Carrier evidenced an intent to carry out his alleged threat. Rather, Plaintiff makes the vague statement that Romero was "acting like" he was going to open the other inmate's cell door. Plaintiff has not provided any evidence that the other inmate had any ill will toward Plaintiff.[6] Plaintiff's allegations, without more, do not amount to a threat of

---

[6] Defendants assert that the other inmate has a history of behavioral problems, and thus, he would not have been celled with anyone else, including Plaintiff. (Doc. 108 ¶ 19). In Response, Plaintiff asserts that he was unaware of the other inmate's history of past behavioral problems at the time of the alleged incident. (Doc. 132 ¶¶ 13-14, 19.)

- 8 -

1   deadly force nor do they show that Carrier took any steps toward carrying out such an
2   act. The cases that recognize an Eighth Amendment claim involving a threat by a prison
3   official involve circumstances where the prison official threatens the inmate and, at the
4   same time, draws a weapon on the inmate. *See Noll*, 2012 WL 2055033, at *2-3 (citing
5   cases). Those cases are distinguishable from this case, where Carrier's alleged actions do
6   not demonstrate a threat of deadly force accompanied by the intent to carry out that threat
7   or, in other words, an objective or subjective substantial risk of harm. Further, Plaintiff
8   has not presented any evidence that he sustained psychological damage from Carrier's
9   alleged threats. *See Celotex*, 477 U.S. at 324 (party opposing summary judgment "must
10  go beyond the pleadings and . . . designate specific facts showing" a material factual
11  dispute).

Accordingly, Defendants' Motion for Summary Judgment will be granted as to Count IV.

### 2.   **Defendant Romero—Count VII**

Plaintiff asserts that on December 6, 2012 and May 18, 2013,[7] Defendant Romero called him a rat and child molester in front of the entire pod and, on May 21, 2013, as Plaintiff was being escorted to the showers, the entire pod of inmates yelled at Plaintiff that he was a rat and child molester and stated they would kill Plaintiff. (Doc. 132 ¶¶ 22-25.) Defendant Romero denies that he ever called Plaintiff a "rat" or "child molester." (Doc. 108 ¶¶ 24-25.) Plaintiff admits that he was never assaulted as a result of Romero's alleged statements. (*Id.* ¶ 34.)

Plaintiff has attempted to obtain and offer the fraudulent testimony of several

---

Because Plaintiff admits that he was unaware of the other inmate's past behavioral problems, it is not clear why Plaintiff would have considered the other inmate to be a threat such that Plaintiff would have sustained psychological damage from the threat of moving that inmate into Plaintiff's cell.

[7] Plaintiff does not refer to any statements made on December 11, 2012 in his Statement of Facts (Doc. 132.) As such, the Court does not discuss Plaintiff's allegations relating to December 11 here. Even assuming Plaintiff intended to include the December 11, 2012 allegations, they would not change the Court's analysis.

witnesses in support of his claims relating to Defendant Romero calling him a child molester and rat, and in support of his excessive force claim. (Doc. 104 (citing Doc. 83 and Doc. 93-2 referring to false declarations submitted by Plaintiff by alleged witnesses in support of his claims)). Plaintiff also attempted to bribe other inmates to support those allegations. (Doc. 136 (discussing Plaintiff's attempts to bribe three other inmates to provide false statements in support of his claims)). In light of Plaintiff's submission of false affidavits to support his version of events and attempts to bribe other inmates to support his version of events, no reasonable jury could believe Plaintiff's version.[8] *See Scott v. Harris*, 550 U.S. 372, 380 (2007) ("[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.")

For the foregoing reasons, Defendants' Motion for Summary Judgment will be granted as to Count VII.

**B.     Count VIII**

Defendants next assert that they are also entitled to summary judgment on Plaintiff's First Amendment retaliation claim in Count VIII because (1) Plaintiff cannot prove that Defendant Romero called Plaintiff a rat or child molester because of Plaintiff's claims against him, (2) that the comments chilled Plaintiff's exercise of his First Amendment rights, (3) Defendant Romero denies Plaintiff's allegations, and (4) Plaintiff does not have the requisite injury to support such claims.

Prisoners have a First Amendment right to file grievances and pursue civil rights actions. *Rhodes v. Robinson*, 408 F.3d 559, 567 (9th Cir. 2005) (citations omitted). Thus, allegations of retaliation against an inmate's First Amendment rights to speech or to petition the government may support a civil rights claim. *See Rizzo v. Dawson*, 778

---

[8] The now-withdrawn affidavit of Inmate Vinano about the events of May 18, 2013 and May 21, 2013 is demonstrably false. Inmate Vinano was not housed at SCC in Eloy, Arizona in May 2013. He arrived at SCC in October 2013 and, in May 2013, was housed at the Halawa Correctional Facility in Oahu Hawaii. (*See* Docs. 93-2, 93-6.)

F.2d 527, 531-32 (9th Cir. 1985); *Valandingham*, 866 F.2d at 1138; *see also Pratt v. Rowland*, 65 F.3d 802, 806 & n.4, 807 (9th Cir. 1995) (retaliation claims "fall within the 'other protection[s] from arbitrary state action' . . . because they are based upon protection of the prisoner's First Amendment rights, and not their Due Process rights").

"[A] viable claim of First Amendment retaliation entails five basic elements: (1) [a]n assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." *Rhodes*, 408 F.3d at 567-68. A variety of conduct can be actionable as retaliatory if undertaken for an improper purpose. *See, e.g.*, *Rizzo*, 778 F.2d at 531-32. And the resulting injury need not be tangible to support the claim. *See Hines v. Gomez*, 108 F.3d 265, 267, 269 (9th Cir. 1997).

As discussed above, no reasonable jury could believe Plaintiff's version of events claiming that Defendant Romero called Plaintiff a rat and a child molester in front of other inmates. Accordingly, Defendants' Motion for Summary Judgment will be granted as to Count VIII.

**C.     Counts XIII-XVI**

Defendants also assert that they are entitled to summary judgment on Plaintiff's claims in Counts XIII, XIV, XV, and XVI because Plaintiff cannot prove that the force used on him on March 28, 2014 violated the Eighth Amendment.

**1.     Plaintiff's Version of Events**

Plaintiff asserts that on March 28, 2014, Defendants Griego, Carrier, Romero, and Flores came to Plaintiff's cell and told him to cuff up[9] or they would spray Plaintiff with mace. (Doc. 132 ¶ 58; 132-4 at 22-23, ¶ 6.) After escorting Plaintiff away from his cell, Defendant Romero and Flores allegedly pushed and shoved Plaintiff into a shower stall and started slamming his face and head into the concrete tile wall, while continuing to

---

[9] Plaintiff was told to cuff up and be taken to the showers to help him calm down.

1    punch the back of Plaintiff's head with "rabbit punches." (Doc. 132 ¶¶ 46, 76.) Plaintiff
2    asserts that Romero pulled the back of Plaintiff's hair to get his face and head away from
3    the wall only to slam it back into the wall, while Flores kneed Plaintiff in the legs. (*Id.*)
4    Plaintiff asserts that he kicked back once to try and stop the officers from beating and
5    hurting him, and leg restraints were put on him. (Doc. 132-4 at 25, ¶ 29.) Plaintiff
6    asserts that he was then locked in the shower and Defendant Romero brought a video
7    camera to the shower to describe what happened; at the time, Plaintiff was attempting to
8    address the camera and show the cuts and blood on his face, but Griego ordered Plaintiff
9    to turn around and face the back wall of the showers, and when Plaintiff persisted in
10   trying to show the camera his face, Plaintiff was maced by Romero. (Doc. 132 ¶ 86;
11   Doc. 132-4 at 25-26, ¶¶ 29, 35-37.) Plaintiff asserts that the pepper spray burned the cuts
12   on his face. (*Id.* ¶ 37.) Plaintiff denies that he violated any facility rules, that he was
13   yelling and cursing, or that he was aggressive. (Doc. 132 ¶¶ 49-50, 53.) Plaintiff denies
14   that he attempted to resist or pull away or push himself backwards. (*Id.* ¶¶ 72, 93.)
15   Plaintiff asserts that he has scars on his face and a right knee injury as a result of the force
16   used. (*Id.* ¶ 94.)

17          The March 28, 2014 medical record reveals that Plaintiff had a small laceration
18   and skin tear on the bridge of his nose that was actively bleeding, and that his nose was
19   swollen and bruised and he was breathing from his mouth. (*Id.* at 51.) On April 3, 2014,
20   Plaintiff complained to medical of intermittent headaches and an injury to his leg that had
21   not been examined arising from the use of force. (*Id.* at 55.) On April 8, 2014, Plaintiff's
22   right knee was examined and bruising was found over the anterior and medial right knee;
23   the assessment was a sprain/contusion of the right knee. (*Id.* at 56-57.)

24          **2.     Defendants' Version of Events**

25          Defendants assert that on March 28, 2014, Plaintiff began yelling and cursing and
26   threatening a case manager from his cell. (Doc. 108 ¶ 49.) Defendant Griego asked
27   Plaintiff what the problem was and instructed him to calm down, but Plaintiff refused to
28   comply and other inmates in the pod began to yell and kick their doors. (*Id.* ¶¶ 59-60.)

Defendant Griego directed Plaintiff to submit to hand restraints and exit his cell and directed Flores and Romero to remove Plaintiff from his cell. (Doc. 108 ¶ 61.) Defendant Griego ordered Romero and Flores to place Plaintiff in the shower to deescalate the situation and to remove items from Plaintiff's cell that Plaintiff was not supposed to have as a result of a disciplinary action. (*Id.* ¶ 62.)

Plaintiff submitted to hand restraints and he was removed from his cell by Defendant Romero and Flores. (*Id.* ¶ 68.) Plaintiff continued to swear and shout obscenities as he was being escorted, further inciting the other inmates in the pod. (*Id.* ¶ 70.) As Romero and Flores attempted to place Plaintiff in the shower, Plaintiff began to physically resist by pulling away, planting his feet, and pushing himself backward and refused directives to comply. (*Id.* ¶ 72.) Romero and Flores then "physically place[d]" Plaintiff in the shower. (*Id.* ¶ 74.) Plaintiff then kicked backwards with his right leg, striking Defendant Romero in the right thigh and Romero "physically placed" Plaintiff against the shower wall to regain control and prevent the situation from escalating. (*Id.* ¶¶ 76-77.) When Plaintiff continued to resist, Defendant Flores placed his forearm against Plaintiff's upper shoulder and lower neck area to keep him from striking the officers with his head and used his right knee to administer several knee strikes to Plaintiff's right thigh. (*Id.* ¶¶ 78-79.) Plaintiff was placed in leg restraints, but after the officers were clear of the shower, Plaintiff resumed shouting and swearing and continued to do so despite Defendant Griego's warnings to step away from the door or chemical agents would be used. (*Id.* ¶¶ 84-86.) When Plaintiff did not comply, Griego ordered Romero to deploy chemical agents and Romero deployed a one-second burst from his MK-9 at which point Plaintiff stopped yelling and the water in the shower was turned on to allow Plaintiff to decontaminate. (*Id.* ¶¶ 87-88.)

### 3. Legal Standard

Use of excessive force against an inmate violates the inmate's Eighth Amendment right to be free from cruel and unusual punishment. *See Graham v. Connor*, 490 U.S. 386, 393-94 (1989). The use of force is constitutional if it is used in a good faith effort to

keep or restore discipline; it is unconstitutional if it is used "maliciously and sadistically for the very purpose of causing harm." *Whitley v. Albers*, 475 U.S. 312, 320-21 (1986). Not "every malevolent touch by a prison guard gives rise to a federal cause of action"; thus, de minimis use of physical force, provided that use of force is not "repugnant to the conscience of mankind," does not offend the Constitution. *Hudson v. McMillan*, 503 U.S. 1, 9-10 (1992).

A court considers five factors in determining whether a defendant's use of force was sadistic and malicious for the purpose of causing harm: (1) the extent of the injury, (2) the need to use the force, (3) the relationship between the need and the amount of force used, (4) the threat "reasonably perceived" by the officials, and (5) "any efforts made to temper the severity" of the force. *Id.* at 7 (citing *Whitley*, 475 U.S. at 321). When reviewing these *Whitley* factors, the court must remember that prison officials "should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." *Whitley*, 475 U.S. at 321-22 (quoting *Bell v. Wolfish*, 441 U.S. 520, 547 (1979)).

### 4. Discussion

The Parties have different versions of what actions Plaintiff took and what actions Defendants took in response. Plaintiff asserts that he was not resisting and was compliant with orders and that he was beaten and kicked repeatedly. Defendants assert that Plaintiff was resisting and they only took necessary steps to secure Plaintiff.

### a. Romero and Flores

Plaintiff has submitted false affidavits to support his version of events and has attempted to bribe other inmates to support his version of events. The second false affidavit of Inmate Vinano was submitted by Plaintiff to support his version of the March 28 incident. Plaintiff offered Inmate Vinano part of the money he would receive if he won his case. He also told Inmate Vinano that, in addition to money, he wanted to get officers fired. In March 2014, Inmate Vinano was assigned to a different pod than the

one in which the incident took place. Plaintiff also attempted to bribe Inmate Smith to give false testimony about the March 28 incident. (Doc. 116-1.) Similarly, Inmate Clancy has provided a declaration of occasions when he heard Plaintiff offer money to inmates after he won his lawsuit if they would make false statements about the March 28 incident. (Doc. 135-1.) No reasonable jury would believe Plaintiff's version of the March 28 incident or that Defendants Romero and Flores used excessive force on March 28. *See Scott*, 550 U.S. at 380. Defendants' Motion for Summary Judgment will be granted as to Counts XIII and XIV as alleged against Defendant Romero and Flores.

### b. Carrier and Griego

Plaintiff does not assert that Defendants Carrier and Griego were present during the incident in the shower. Indeed, Plaintiff only alleges that Defendant Carrier was present when Plaintiff was ordered from his cell. Plaintiff theorizes that Defendant Carrier knew that Defendants Romero and Flores would assault Plaintiff and that, by ordering Plaintiff to go with Defendants Romero and Flores, Defendant Carrier knew there was a threat to Plaintiff's safety. But Plaintiff has presented no evidence that Defendant Carrier knew of a threat to his safety. Conclusory allegations, unsupported by factual material, are insufficient to defeat a motion for summary judgment. *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989); *see Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007) ("[c]onclusory, speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and defeat summary judgment").

Likewise, Plaintiff does not assert that Defendant Griego was present during the alleged assault. Plaintiff does allege that Griego was present when pepper spray was deployed on Plaintiff after Plaintiff refused to comply with the orders of prison staff. Plaintiff admits that he was not complying with prison staff's orders prior to the order to deploy pepper spray, and although Plaintiff may believe that he had good reasons for failing to comply with prison staff's orders, the excessive force factors of the need to use the force, the relationship between the need and the amount of force used, the threat

reasonably perceived by the officials, and efforts made to temper the severity of the force all favor Griego with regard to the deployment of the pepper spray. Plaintiff refused to comply with orders and prison staff deployed one short burst of pepper spray to gain Plaintiff's compliance. Given these facts, the deployment of the pepper spray did not constitute excessive force.

Moreover, as with Carrier, Plaintiff's theory that Griego knew about a plan to assault him or ordered Defendants Romero and Flores to carry out an assault is purely conjecture and is not supported by any evidence.

Plaintiff has failed to support his theory that Defendants Carrier and Griego were aware of an excessive risk to Plaintiff's safety, which they disregarded. Accordingly, Defendants' Motion for Summary Judgment will be granted as to Plaintiff's claims in Counts XV and XVI as asserted against Defendants Carrier and Griego.

**IT IS ORDERED:**

(1) The reference to the Magistrate Judge is withdrawn as to Defendants' Motion for Summary Judgment (Doc. 107), Defendants' Motion for Sanctions Pursuant to Rule 11 (Doc. 104), and Plaintiff's requests for injunctive relief (Doc. 101; Doc. 184; Doc. 186).

(2) The Magistrate Judge's Report and Recommendation (Doc. 167) is **adopted** as the order of this Court; Defendants' Motion for Sanctions Pursuant to Rule 11 (Doc. 104) is **denied**.

(3) Plaintiff's request for injunctive relief contained in Doc. 101 is **denied**.

(4) Plaintiff's request for injunctive relief contained in Doc. 184 and Doc. 186 is **denied**.

/ / /

/ / /

/ / /

/ / /

1     (5)    Defendants' Motion for Summary Judgment (Doc. 107) is **granted** and the Clerk of Court must enter judgment accordingly.

Dated this 8th day of September, 2016.

                                        Susan R. Bolton
                                        United States District Judge